UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CATHY S.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-821
Litkovitz, M.J.

ORDER

Plaintiff Cathy S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the Commissioner's response (Doc. 21), and plaintiff's reply (Doc. 22).

**I. Procedural Background**

Plaintiff filed her application for DIB in July 2016 alleging disability since August 11, 2011 (Tr. 201), due to epilepsy, type II diabetes mellitus, chronic obstructive pulmonary disease (COPD), tendonitis, high blood pressure, and bronchitis (Tr. 243). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Stuart Adkins on May 15, 2019. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. (Tr. 28-67). On August

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

14, 2019, the ALJ issued a decision finding plaintiff was disabled as of July 15, 2016, but not prior to this date. (Tr. 115-35).

The Appeals Council granted plaintiff's request for review and found that plaintiff was "entitled to a period of disability beginning on July 15, 2016, and to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act." (Tr. 11). In so doing, the Appeals Council specifically adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable"; his "findings or conclusions regarding whether the claimant is disabled for the period July 15, 2016"; his conclusions regarding plaintiff's "statements concerning the alleged symptoms"; and affirmed his "findings and conclusions at Steps 1 through 5 of the sequential evaluation process. . . ." (Tr. 8-9). This matter is properly before this Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, August 11, 2011, [plaintiff] has had the following severe impairments: obesity, epilepsy, type II diabetes mellitus, chronic obstructive pulmonary disease (COPD), hypertension, and carpal tunnel syndrome (20 CFR 404.1520(c)).

4. Since August 11, 2011, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the ALJ] finds that prior to July 15, 2016, the date [plaintiff] became disabled, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying about twenty pounds occasionally and ten pounds occasionally. She was able to stand and/or walk for about six hours and sit for about six hours in an eight-hour workday. She was able to frequently push and/or pull with the upper extremities. She was limited to no climbing of ladders, ropes, and scaffolds with frequent climbing of ramps and stairs. She was able to frequently handle, finger, and feel bilaterally. [Plaintiff] should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, odors, fumes, and pulmonary irritants. She should also avoid exposure to unprotected heights and dangerous machinery.

6. After careful consideration of the entire record, the undersigned finds that beginning on July 15, 2016, [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying about twenty pounds occasionally and ten pounds occasionally. She is able to stand and/or walk for about six hours and sit for about six hours in an eight-hour workday. She is able to frequently push and/or pull with the upper extremities. She is limited to no climbing of ladders, ropes, and scaffolds with

frequent climbing of ramps and stairs. She is limited to occasionally handling, fingering, and feeling bilaterally. [Plaintiff] should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, odors, fumes, and pulmonary irritants. She should also avoid exposure to unprotected heights and dangerous machinery.

7. Prior to July 15, 2016, [plaintiff] was capable of performing past relevant work as a database design analyst and as a database administrator. This work did not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).

8. Beginning on July 15, 2016, [plaintiff]'s residual functional capacity has prevented [plaintiff] from being able to perform past relevant work (20 CFR 404.1565).

9. [Plaintiff] was an individual of advanced age on July 15, 2016, the established disability onset date (20 CFR 404.1563).

10. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

11. [Plaintiff] does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

12. Since July 15, 2016, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1560(c) and 404.1566).

13. [Plaintiff] was not disabled prior to July 15, 2016, (20 CFR 404.1520(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 121-34).

### C. The Appeals Council's Decision

The Appeals Council granted plaintiff's request for review of the ALJ's decision on July 11, 2020. (Tr. 196-200). On August 21, 2020, the Appeals Council issued its decision, adopting

the ALJ's partially favorable decision and finding that plaintiff "is entitled to a period of disability beginning on July 15, 2016, and to disability insurance benefits. . . ." (Tr. 8-11).

The Appeals Council made the following findings:

1. [Plaintiff] met the special earnings requirements of the Act on August 11, 2011, the date [plaintiff] stated she became unable to work and continues to meet them through December 31, 2016.

[Plaintiff] has not engaged in substantial gainful activity since August 11, 2011.

2. [Plaintiff] has the following severe impairments: obesity, epilepsy, type II diabetes mellitus, chronic obstructive pulmonary disease (COPD), hypertension, and carpal tunnel syndrome, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3. Before July 15, 2016, [plaintiff]'s combination of impairments resulted in the following limitations on her ability to perform work-related activities: she could perform light work as that is defined in the regulations, with the additional limitations of frequently pushing and/or pulling with the upper extremities; no climbing of ladders, ropes, and scaffolds; frequently climbing ramps and stairs; frequently handling, fingering, and feeling bilaterally; avoiding concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, odors, fumes, and pulmonary irritants; and avoiding exposure to unprotected heights and dangerous machinery. As of July 15, 2016, [plaintiff]'s combination of impairments has resulted in the following limitations on her ability to perform work-related activities: she can perform light work as that is defined in the regulations, with the additional limitations of frequently pushing and/or pulling with the upper extremities; no climbing of ladders, ropes, and scaffolds; frequently climbing ramps and stairs; occasionally handling, fingering, and feeling bilaterally; avoiding concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, odors, fumes, and pulmonary irritants; and avoiding exposure to unprotected heights and dangerous machinery.

4. [Plaintiff]'s alleged symptoms are consistent with and supported by the evidence of record, but only to the extent that they relate to the period July 15, 2016. At all other times, [plaintiff]'s alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the Administrative Law Judge's decision.

> 5. [Plaintiff] is unable to perform past relevant work as database design analyst and a database administrator because, as of July 15, 2016, she can only occasionally handle, finger, and feel bilaterally.
>
> 6. [Plaintiff] is 57 years old, which is defined as an individual of advanced age and has a high school education. [Plaintiff]'s past relevant work is skilled. [Plaintiff] has no skills that are transferable to skilled or semiskilled occupations within her residual functional capacity.
>
> 7. As of July 15, 2016, an individual with those vocational factors, who has the residual functional capacity to perform a reduced range of light work, is disabled, using Medical-Vocational Rule 202.06 as a framework for decision making.
>
> 8. [Plaintiff] has been disabled as defined in the Social Security Act since July 15, 2016, but not before that date.

(Tr. 9-10).

### D. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

E. **Specific Errors**

On appeal, plaintiff raises a single assignment of error: "the ALJ and Appeals Council reversibly erred in finding that [she] could continue working at a highly skilled past relevant job that the [VE] testified she could not perform." (Doc. 16 at PAGEID 896). While not explicit, plaintiff appears to make an alternative argument that the referenced testimony was based on evidence in the medical record demonstrating that plaintiff suffered from mental impairments, which the ALJ failed to consider in his residual functional capacity (RFC) determination.

The Commissioner responds, first, by outlining the reasons why the ALJ's decision was supported by substantial evidence as related to the medical evidence, medical opinion evidence, and plaintiff's symptom severity. The Commissioner next argues that the ALJ properly declined to rely on the VE's testimony concerning plaintiff's ability to perform past work, which

conflicted with agency regulations (20 C.F.R. § 404.1566(c)) and guidelines (SSR 82-61[2]). In her reply, plaintiff responds that 20 C.F.R. § 404.1566(c) applies to step five (adjustment to work) and not step four (past relevant work), and SSR 82-61[3] is consistent with her argument that the ALJ failed to appreciate mental impairments demonstrated in the record for purposes of plaintiff's RFC.

1. *Was the VE's testimony appropriate under agency regulations and guidelines?*

At the ALJ hearing, the ALJ and VE had the following exchange relevant to plaintiff's appeal:

Q [C]an you classify [plaintiff's] past work?

A Yes. The past work as a Senior Data Analyst would be consistent with the DOT job title of Database Design Analyst. The DOT code is 039.162-014. That's a sedentary strength occupation, has an SVP rating of 8 which would make it highly skilled. The work as a data analyst and the work at Union Central, even [though] there were differences, would be consistent with the DOT job title of Database Administrator. The DOT code is 039.163-010. It's a sedentary strength occupation, has an SVP rating of 8 which would make it highly skilled.

. . .

Q Now looking at our hypotheticals, assume a hypothetical individual with the same age, education, as the claimant with the residual functional capacity to lift and[/]or carry 20 pounds occasionally and ten pounds frequently, can stand and[/]or walk for about six hours and sit for about six hours of an eight hour work day, can frequently push and[/]or pull with the upper extremities, can never climb ladders, ropes and scaffolds, can frequently climb ramps and stairs, can frequently handle, finger and feel bilaterally and should avoid concentrated exposure to

---

[2] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

[3] "Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation As Generally Performed," SSR 82-61, 1982 WL 31387, at *1 ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work.").

9

> extreme heat, extreme cold, wetness, humidity, dust, odors, fumes and pulmonary irritants and should avoid exposure to unprotected heights and dangerous machinery. Wound such an individual be able to perform claimant's past relevant work?
>
> A From a physical standpoint, she could. *But from an intellectual, cognitive for training aspects, she could not because of the length of time she last worked to the present. In other words, computer technology changes rapidly. . . . So I don't think she has the current skills for the current job market as [] to those jobs.*

(Tr. 60-61) (emphasis added). The VE also confirmed that this opinion applied to the time period prior to the date last insured of December 31, 2016. (Tr. 61).

When the Appeals Council granted review of the ALJ's decision, it was accompanied by the following statement regarding this testimony:

> The sole purpose of this decision is to clarify that the [ALJ] did not err when he disregarded [improper parts of the VE's testimony].
>
> An individual is found to be under a disability only if his or her physical or mental impairment(s) is the primary reason for inability to engage in substantial gainful work. . . . The proper test in the fourth step of the sequential evaluation process is whether the individual can do his or her previous work ([SSR] 82-40). Additionally, a claimant who remains physically and mentally able to perform his or her past relevant work will be found not disabled *regardless of whether that previous work exists in the national economy* ([SSR] 05-1c). . . . [T]he [VE]'s opinion regarding whether you could still perform your past relevant work was not based on a comparison between your [RFC] and the demands of your past relevant work, but rather on whether you have the skills needed to perform other jobs that currently exist, a criteria that is not part of the evaluation of step four of the sequential evaluation process. . . .

(Tr. 197-98) (emphasis added).

Plaintiff first argues that the ALJ mischaracterized the VE's testimony as finding her able to perform past relevant work, when, in fact, he found that she *could not* perform past relevant work. (*See* Tr. 133 (emphasis added) (Based on plaintiff's RFC prior to July 15, 2016, "the

10

vocational expert testified that the claimant was *physically able* to continue working at her past relevant work. Therefore, the undersigned finds the claimant had the RFC to perform her past relevant work. . . .")). Plaintiff underscores her first argument as follows: "How could an individual 'continue working' at a position that effectively no longer existed?" (Doc. 16 at PAGEID 900).

The threshold question is whether the VE's testimony suggesting that plaintiff was not able to perform past relevant work was appropriate under agency regulations and guidelines. The Commissioner argues that agency regulations settle the question:

> We will determine that you are *not disabled* if your residual functional and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of . . . (4) *Technological changes in the industry in which you have worked*. . . .

20 C.F.R. § 404.1566(c)(4) (emphasis added). Plaintiff counters that this regulation falls under the heading "Work which exists in the national economy"—a step five consideration. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See . . . § 404.1560(c)."); 20 C.F.R. § 404.1560(c)(1) (emphasis added) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy. . . .").

Step five and § 404.1566(c) notwithstanding, the Supreme Court has considered the relevance at step four of whether a claimant's previous work exists in the national economy:

> At step four, the SSA will find not disabled a claimant who can do his previous work, without inquiring whether that work exists in the national economy. Rather, it reserves inquiry into the national economy for the fifth step, when it

11

considers vocational factors and determines whether the claimant can perform other jobs in the national economy. *See* 20 CFR §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c). That interpretation is a reasonable construction of § 423(d)(2)(A).

*Barnhart v. Thomas*, 540 U.S. 20, 20-21 (syllabus) (2003). *See also* SSR 05-1c ("[A] claimant who remains physically and mentally able to perform his or her past relevant work will be found not disabled (see 20 CFR 404.1520 and 416.920), regardless of whether that previous work exists in the national economy."). These authorities foreclose the argument that plaintiff's ability to perform past work at step four contemplates changes to the availability of, or technological advancements to, the past work. *See Fobbs v. Colvin*, No. 13-11288, 2014 WL 4638913, at *12 (E.D. Mich. Sept. 16, 2014) (adopting Report and Recommendation citing *Wallschlaeger v. Schweiker,* 705 F.2d 191, 196 (7th Cir. 1983)) ("[A]trophy of skills does not prevent performance of past work for disability purposes[.]")). The ALJ therefore rightly declined to incorporate the VE's testimony that plaintiff could not perform past relevant work to the extent such testimony was based on plaintiff having outdated computer technology skills.

2. *Did the ALJ err by leaving out mental impairments in his RFC determination?*

Plaintiff's implied alternative argument is that the VE testified that she could not perform her past relevant work because of mental impairments[4] that the ALJ, erroneously, did not include in his RFC determination. Plaintiff highlights several primary care records between 2012 and 2014 reflecting cognitive symptoms such as dizziness, seizures, difficulty initiating sleep, headaches, loss of consciousness, memory impairment, near syncope, speech changes, tremors,

---

[4] Plaintiff's arguments are limited to her alleged mental/cognitive impairments; any errors related to plaintiff's physical impairments are therefore deemed waived. *See Kuhn v Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

12

depressed mood, anxiety, depression, difficulty concentrating, feelings of guilt, insomnia, marked diminished interest or pleasure, suicidal ideation, and numbness in extremities. (*See* Tr. 522, 531, 537-38, 544). Plaintiff also highlights the fact that she told consultative examiner Sarah Barwick, Psy.D., that she was terminated from her last prior job "because [she] couldn't remember things." (Tr. 623). Plaintiff lastly emphasizes her psychological testing scores reported by Dr. Barwick, which ranged from low average to borderline across several categories.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes weighing the relevant medical opinions of record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).[5]

The ALJ's RFC determination, which does not include any limitations from alleged mental impairments, is supported by substantial evidence. The ALJ thoroughly reviewed the record evidence and reasonably determined that plaintiff was able to perform her past relevant work despite any alleged mental impairments.

As an initial matter, plaintiff did not allege she suffered from a mental or cognitive impairment in connection with her disability application. (Tr. 260, noting physical impairments

---

[5] Plaintiff does not challenge the weight that the ALJ assigned to the opinions of Dr. Barwick; Robyn Murry-Hoffman, Ph.D.; or Irma Johnson, Psy.D., regarding plaintiff's mental impairments. (*See* Tr. 130). The Court therefore declines to review this aspect of the ALJ's opinion and any argument related thereto is deemed waived. *See Kuhn*, 709 F.3d at 624.

only and that she was "forgetful (medication side effect)." At the ALJ hearing, her attorney stated plaintiff had severe physical impairments, but he did not mention any mental impairments. (Tr. 33). In addition, the ALJ did not find plaintiff suffered from any severe mental impairments, and plaintiff does not take issue with the ALJ's step two finding.

Nevertheless, the ALJ fully considered plaintiff's subjective allegations when determining her RFC. The ALJ reviewed plaintiff's Function Report (Tr. 123-24, referring to Tr. 260-61, 265-66), her testimony (*id.*, referring to Tr. 51-53), her medical record between 2011 and 2016 related to epilepsy (Tr. 124-125, referring to primary care and neurology records), and Dr. Barwick's October 2016 psychological consultative examination (Tr. 125, referring to Tr. 621-27). The ALJ acknowledged plaintiff's reports of forgetfulness and depression due to her medication, sleep interruption and headaches due to seizures, and difficulty concentrating. (Tr. 124, referring to Tr. 51-53, 260-61, 265). The ALJ also noted, however, that she reported she could handle stress "okay" and adjust to changes in routine. (*Id.*, referring to Tr. 266).

In assessing the consistency of plaintiff's subjective allegations with the record, the ALJ also considered primary care records reflecting that plaintiff did not regularly come to appointments, ran out of medications, and was not following up with neurology as advised. (Tr. 124-25, referring to Tr. 536, 547, 552). Plaintiff does not offer any justification for this medical noncompliance. *Cf. Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (holding that it is appropriate to consider prescribed treatments in assessing a claimant's subjective symptoms, but the ALJ should also consider the claimant's reasons for pursuing (or not) such treatments).

The ALJ also cited neurology records from Prem P. Mathai, M.D. In May 2015, plaintiff's neurological examination was entirely normal with no neurological deficits. (Tr. 500-01). Plaintiff denied experiencing depression or any other psychiatric impairment. (Tr. 499). Dr. Mathai concluded that plaintiff's epilepsy was controlled with medication. (Tr. 501). Reviewing plaintiff's 2011 brain MRI, he noted a small parafalcine meningioma (benign intracranial tumor) but also that the MRI was otherwise unremarkable. (*Id.*). Finally, Dr. Mathai acknowledged plaintiff's reported memory issues related to her epilepsy medication (Dilantin) but told plaintiff it could be possible to switch medications. (*Id.*). In September 2016, Dr. Mathai recorded another completely normal neurological examination, including normal recent and remote memory and concentration, and noted that plaintiff's epilepsy was still controlled with medication. (Tr. 506-07). Dr. Mathai reviewed an updated brain MRI and found no change from his May 2015 review. (Tr. 507).

The ALJ next reviewed Dr. Barwick's psychological consultative evaluation from October 2016. (Tr. 621-27). Plaintiff complained of memory problems, with difficulty remembering what she was saying, trouble finding words, and trouble remembering names. (Tr. 622). Plaintiff reported that she was terminated from her last job because she could not remember things, and she had looked for work, but "[t]he role of the data analyst has changed to programming and I don't know the computer language." (Tr. 623). Plaintiff reported being "a little sad" over her job loss with "occasional" anxiety. (*Id.*). Plaintiff also reported attention and concentration problems secondary to seizure activity. (*Id.*).

15

Notwithstanding the above, plaintiff denied any history of mental health counseling or present concerns related to depression or anxiety. (Tr. 626). While certain of plaintiff's tests suggested that she was functioning in the borderline range of intelligence, Dr. Barwick concluded that plaintiff's performance overall was "affected by slowed motor skills" and that her functioning, with that considered, was more accurately in the "low average range." (Tr. 626). Dr. Barwick did not make a neurocognitive diagnosis. (*Id.*).

In sum, plaintiff was noncompliant with epilepsy-related medication and follow-up, she did not exhibit any significant neurological abnormalities, her neurologist considered her epilepsy controlled with medication, and she was never diagnosed with a neurocognitive disorder. This is substantial evidence in support of the ALJ's conclusion that plaintiff's residual functional capacity did not require additional limitations for mental/cognitive issues. (*See* Tr. 126). Plaintiff's references to her subjective reports of mental/cognitive symptoms to her primary care provider between 2012 and 2014, noted above, do not alter this conclusion. The ALJ considered plaintiff's alleged symptoms against the record as a whole and his RFC determination is based on substantial evidence.

Based on the foregoing, plaintiff's Statement of Errors (Doc. 16) is **OVERRULED. IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED**, judgment be entered in favor of the Commissioner, and this case is **CLOSED** on the docket of the Court.

Date: 1/25/2022

Karen L. Litkovitz
United States Magistrate Judge

16